ORDER
Petitioner Raymond Tibbetts, .filed a petition for. a writ, of habeas corpus, which the United States District Court for the Southern District of Ohio determined was a second-or-successive habeas petition and transferred to our court. The district'court properly concluded that Tibbetts’s petition is second or successive, and Tibbetts’s motion to remand is therefore DENIED. Because Tibbetts filed a second-or-successive habeas petition and cannot meet the requirements of 28 U.S.C. § 2244(b), his ha-beas petition is DISMISSED.
On August 27, 1998, Tibbetts was convicted of one count of murder, three counts of aggravated murder, and one count of aggravated robbery and was sentenced to death in the Court of Common Pleas in Hamilton County, Ohio. On July 5, 2001, the Supreme Court of Ohio affirmed Tib-betts’s convictions and sentences. State v. Tibbetts, 92 Ohio St.3d 146, 749 N.E.2d 226 (2001). Tibbetts filed his first petition for a writ of habeas corpus on February 18, 2003, which asserted, in Claim 14, that his “constitutional rights were violated by the administration of the death penalty by lethal injection in the state of Ohio.” The Magistrate Judge determined that claim to be meritless because “[n]o court has found this method of execution to be constitutionally impermissible.” Tibbetts did not object to this ruling, and therefore abandoned that claim. The district court adopted the Magistrate Judge’s report and recommendation and denied Tibbetts’s first habeas petition. Tibbetts v. Bradshaw, No. 1:03-CV-114, 2006 WL 871197 (S.D. Ohio Mar. 29, 2006). This court ultimately affirmed the district court’s order denying Tibbetts’s first habeas petition. See Tibbetts v. Bradshaw, 633 F.3d 436 (6th Cir. 2011).
Tibbetts filed his second petition for a writ of habeas corpus on July 23, 2014. The second- habeas petition states ten grounds •for.relief, all relating to Tibbetts’s central claim that his execution-by lethal injection under Ohio law'violates the Eighth and Fourteenth,.Amendments. Tibbetts sought to amend his- second habeas petition several times. The most recent motion to amend was filed' on March 8, 2017, and sought to *405 substitute four grounds addressing Ohio’s recent lethal injection protocols for the ten grounds originally stated in his second ha-beas petition.
After extensive litigation, the district court determined that this habeas petition and the motion to amend was a second-or-successive petition, held that it lacked jurisdiction to consider the petition, and transferred it to this court. Tibbetts has now filed a motion to remand the case to the district court, arguing that his second habeas petition is not second or successive because his new claims were unripe when he filed his initial habeas petition.
The Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”) limits the authority of federal courts to grant relief to individuals who previously filed a habeas petition and requires petitioners challenging state court judgments to seek authorization in a federal appeals court before filing a “second or successive” petition in district court.[1] 28 U.S.C. § 2244(b); In re Stansell, 828 F.3d 412, 414 (6th Cir. 2016). A second-or-successive habeas petition stating claims that were presented in a prior petition “shall be dismissed.” § 2244(b)(1). To receive an order authorizing the district court to consider a second-or-successive habeas petition raising new claims, the applicant must make a prima facie showing of: (1) “a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable,” or (2) newly discovered evidence which could not have been discovered previously through the exercise of due diligence and which would be sufficient to establish, by clear and convincing evidence, that no reasonable fact-finder would have found the applicant guilty. § 2244(b)(2), (b)(3); Tyler v. Anderson, 749 F.3d 499, 508 (6th Cir. 2014).
Tibbetts concedes that his second petition (including the claims asserted in his proposed amended petition) does not' satisfy the requirements ' stated in 28 U.S.C. § 2244(b). Tibbetts, however, asserts that § 2244(b) does not apply and that he does not need permission to bring his second habeas petition in the district court. He argues that his habeas petition, although second-in-time, is not a second- or-successive petition because his new claims were unripe when he filed his initial habeas petition.
“If an application is ‘second or successive,’ the petitioner must obtain leave from the Court of Appeals before filing it with the district court.... If, however, [the] application [is] not second or successive, it [is] not subject to § 2244(b) at all, and [the] claim [is] reviewable.” Magwood v. Patterson, 561 U.S. 320, 330-31, 130 S.Ct. 2788, 177 L.Ed.2d 592 (2010). AEDPA does not define the phrase “second or successive.” However, courts generally apply the abuse of the writ doctrine to determine whether a petition is second or successive. In re Bowen, 436 F.3d 699, 704 (6th Cir. 2006). “Under the abuse of the writ doctrine, a numerically second petition is ‘second’ when it raises a claim that could have been raised in the first petition but was not so raised, either due to deliberate abandonment or inexcusable neglect.” Id. (citing McCleskey v. Zant, 499 U.S. 467, 489, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)).
*406 The United States Supreme Court has further explained that the phrase “second or successive” “must be interpreted with respect to the judgment challenged.” Magwood, 561 U.S. at 332-33, 130 S.Ct. 2788 (citations omitted); see Stansell, 828 F.3d at 415. For example, a petition is not second or successive “[i]f an individual’s petition is the first to challenge a particular state judgment.” Stansell, 828 F.3d at 415 (citing Magwood, 561 U.S. at 331-33, 130 S.Ct. 2788); see King v. Morgan, 807 F.3d 154, 156-57 (6th Cir. 2015). Similarly, a petition is not second or successive when it raises a claim that was unripe for review when the first habeas petition was filed. Panetti v. Quarterman, 551 U.S. 930, 945-47, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007) (addressing a second habeas petition raising a Ford-based incompetency claim); In re Jones, 652 F.3d 603, 605-06 (6th Cir. 2010) (addressing a second habeas petition raising an ex post facto claim regarding amendments to Michigan’s parole system). A claim is unripe when “the events giving rise to the claim had not yet occurred.” Jones, 652 F.3d at 605.
Tibbetts’s current habeas petition challenges his original state-court judgment, but he argues that he could not have raised his lethal-injection challenge until the state adopted the revised execution protocol in October 2013 or November 2016, because such a claim would not have been ripe. Tibbetts, however, confuses newly arising legal bases, associated with his pending 42 U.S.C. § 1983 claim challenging Ohio’s current execution protocol, see In re: Ohio Execution Protocols, 860 F.3d 881 (6th Cir. 2017) (en banc), with newly arising circumstances necessary to render his present challenge to his sentence to death by lethal injection ripe. Not only did Tibbetts raise such a general claim in his first habeas petition, none of the newly arising circumstances identified by Tibbetts in his second habeas petition are necessary to a general claim that his sentence to death by lethal injection is unconstitutional. See In re: Lawrence Landrum, Case No. 16-3151 (6th Cir. Feb. 13, 2017). Lethal injection became a method of execution in Ohio in 1993 and became the primary method in 2001. See Ohio Rev. Code § 2949.22; Cooey v. Strickland, 479 F.3d 412, 422 (6th Cir. 2007). Tibbetts had the necessary information to file, and indeed did file, a claim regarding the constitutionality of lethal injection in his initial habeas petition. Further, as this court noted in Adams v. Bradshaw, 826 F.3d 306, 321 (6th Cir. 2016) (Adams III), a challenge to the constitutionality of “lethal injection in general and not a particular lethal-injection protocol” is cognizable in habeas. However, a challenge to a particular procedure, as Tibbetts’s current habeas claims highlighting Ohio’s use of midazo-lam appears to be, is properly brought in an action under 42 U.S.C. § 1983. Id.; see also Glossip v. Gross, _ U.S. _, 135 S.Ct. 2726, 2738, 192 L.Ed.2d 761 (2015); Hill v. McDonough, 547 U.S. 573, 579-80, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006).
It follows that the circumstances said to affect the ripeness of his challenge to the judgment of sentence itself speak rather to the constitutionality of a particular application of a particular protocol to a particular person. Such a particular challenge is properly asserted, as Tibbetts has in other litigation, under § 1983.
It is the view of the dissent that Tib-betts raises a claim that his sentence to death by lethal injection as imposed on him personally is unconstitutional. To the extent that Tibbetts raises such a claim, it is still second or successive. As noted above, a habeas claim is second or successive if it was ripe for review when the first habeas petition was filed. Panetti, 551 U.S. *407 at 947, 127 S.Ct. 2842; see Bowen, 436 F.3d at 704. Tibbetts’s general and unspecific allegations of physical and psychological ailments are insufficient to overcome this limitation. Tibbetts alleges that his “history of severe alcohol and heavy drug abuse,” his “history of hospitalization,” the “effects of his severe childhood trauma and abuse, along with other mental and psychological conditions that have not yet been identified,” and other physical of mental characteristics that he “may develop before his execution date or may currently have” increase the risk that he will suffer unconstitutional harm by lethal injection. But it is indisputable that these physical and psychological characteristics were known when he filed his first habeas petition. Also, he fails to explain why unknown or potentially developing ailments are now ripe for a challenge to the constitutionality of his execution by lethal injection when, by his own contention, they were unripe previously. Tibbetts has not shown that his second habeas petition or his proposed amended petition, to the extent that it challenges the fact and validity of his sentence, was “filed as soon as that claim is ripe.” Panetti, 551 U.S. at 945, 127 S.Ct. 2842.
In assessing ripeness, the dissent seeks to analogize Tibbetts’s allegation of physical and mental characteristics to a Ford claim of mental incompetency, citing Panetti and Stewart v. Martinez-Villareal, 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998). But the dissent has not cited authority, and we are not aware of any, supporting the analogy. The Eighth Amendment has been interpreted as prohibiting execution of one who is insane— whether the “aim be to protect the condemned from fear and pain without comfort of understanding, or to protect the dignity of society itself from the barbarity of exacting mindless vengeance.” Ford v. Wainwright, 477 U.S. 399, 410, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). In Panetti, the Court held that limitations on second- or-successive habeas petitions do not apply to “a Ford-based incompetency claim filed as soon as that claim is ripe.” Panetti, 551 U.S. at 945, 127 S.Ct. 2842. We fully agree with Ford’s recognition of “the natural abhorrence civilized societies feel at killing one who has no capacity to come to grips with his own conscience or deity.” Ford, 477 U.S. at 409, 106 S.Ct. 2595. But we know of no comparable solicitude toward those who claim not to be well enough physically to face execution. And to the extent there may be a substantial risk of severe pain and suffering in the particular method of execution to be employed, again, Tibbetts’s redress is under § 1983, as in his pending civil rights action.
Moreover, we note that Tibbetts enjoys excellent and zealous representation in these matters. Yet, his arguments in support of remand fall short in critical ways. As Panetti recognizes, “last-minute filings that are frivolous and designed to delay executions can be dismissed in the regular course.” Id. at 946, 127 S.Ct. 2842. To be allowed to proceed, a petitioner must make “a threshold preliminary showing.” Id. at 947, 127 S.Ct. 2842. In other words, bald allegations of “physical and mental characteristics” do not suffice. Tibbetts has failed to show his new challenge is “filed when the claim is first ripe,” id., as is required to avoid the statutory bar on “second or successive” petitions.[2]
*408 Because Tibbetts raised his constitutional challenge to lethal injection in his original habeas petition, and he has not identified practices or procedures from the October 2013 or November 2016 protocols or such other circumstances as would render his instant challenge to the validity of his sentence newly “ripe,” his current petition is second or successive. Further, because Tibbetts concedes that this habeas petition does not satisfy the requirements of § 2244(b), it must be dismissed.
Therefore, Tibbetts’s motion to remand is DENIED, and his second-or-successive habeas petition is DISMISSED.

. This case does not raise any issues concerning the propriety of retroactively applying the gate-keeping provisions of the AEDPA to any pre-AEDPA conduct because Tibbetts’s initial habeas petition was filed after AEDPA’s effective date of April 24, 1996. See Landgraf v. USI Film Prods., 511 U.S. 244, 275, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); In re Sonshine; 132 F.3d 1133, 1135 (6th Cir. 1997).

. The dissent posits that the Sixth Circuit has "authorized” what it calls “intermediate challenges” to lethal injection execution that may be cognizable in habeas and not just in a § 1983 claim, citing Adams v. Bradshaw, 826 F.3d 306, 321 (6th Cir. 2016). Yet, while the Adams court recognized the possibility of such a claim, citing Nelson v. Campbell, 541 U.S. 637, 644, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004), it affirmed the denial of habeas *408 relief because petitioner's claim was more appropriately pursued in his ongoing § 1983 litigation. That is the same result we reach here. The allegations of Tibbetts’s most recent petition fail to persuade us, despite clever semantics, that his challenge is other than a challenge to a particular application of a particular method of execution to particular person, not a challenge to the validity of his sentence itself.