NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 19-1489 & 19-1667

———————

RICHARD BALTER,
                              Appellant

v.

UNITED STATES OF AMERICA

———————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 18-cv-16681)
District Judge: Honorable Jerome B. Simandle

———————

Argued April 28, 2021

Before: SMITH, *Chief Judge*, PHIPPS and ROTH, *Circuit Judges*

(Opinion filed: May 28, 2021)

Richard Balter
Petersburg FCI Medium
P.O. Box 1000
Petersburg, VA 23804

        Appellant Pro Se

Harrison P. Graydon          (**ARGUED**)
Duquesne University School of Law
Federal Litigation Clinic
912-914 Fifth Avenue
Pittsburgh, PA 15219

Adrian N. Roe

428 Boulevard of the Allies
First Floor
Pittsburgh, PA 15219

   Counsel for Court Appointed Amicus Curiae

Steven G. Sanders          (**ARGUED**)
Mark E. Coyne
Office of United States Attorney General
970 Broad Street
Room 700
Newark, NJ 07102

   Counsel for Appellee

---

OPINION[*]

---

ROTH, <u>Circuit Judge</u>

Richard Balter appeals the dismissal of his 8 U.S.C.§ 2255 Motion seeking to vacate his convictions for murder for hire and wire fraud. Because we agree with the District Court that his Motion was second or successive, we will affirm.

## I

In 1994, Balter was sentenced to life imprisonment for the murder for hire of Robert Cohen to collect on a $600,000 insurance policy on Cohen's life. Cohen made Balter the beneficiary of the policy, hoping to refortify their business relationship.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Cohen's company, Uneeda, owed approximately $600,000 to Balter's company, NPP. Balter claimed that this debt was undermining NPP's financial stability.[1]

In 1997, Balter filed a *pro se* § 2255 Motion, alleging ineffective assistance of counsel. The motion was denied on the merits. In 2007, in response to a 2005 request, the government returned two boxes of documents taken from NPP's warehouse before trial. Because Balter had become blind due to macular degeneration,[2] he recruited other inmates to help him review the documents. Some of the documents allegedly show that the insurance policy was Cohen's idea, that Balter and Cohen had worked out a payment plan, that NPP was financially stable, and that Balter would have acquired Uneeda if Cohen had lived. Balter alleges that these documents undermined the government's financial-motive theory and were not included in the files counsel was permitted to inspect before trial.

In 2018, Balter filed another *pro se* § 2255 Motion, raising a *Brady* claim based on the documents. Before filing a second or successive § 2255 motion, a prisoner must "move in the appropriate court of appeals for an order authorizing the district court to consider the [§ 2255 motion]."[3] Under § 2255(h)(1), a successive motion is barred unless it, *inter alia*, "contain[s] . . . newly discovered evidence that . . . would be sufficient to

---

[1] *See generally United States v. Balter*, 91 F.3d 427 (3d Cir. 1996).
[2] *See generally Balter v. United States*, No. 09-1409, 2014 WL 1365905 (M.D. Pa. Apr. 7, 2014).
[3] 28 U.S.C. §§ 2244(b)(3)(A), 2255(h).

establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense."[4]

The government argued that Balter's motion was second or successive and moved either to dismiss it or to transfer it to this Court so that Balter could seek permission to file it. On February 27, 2019, the District Court did both. It granted the government's Motion to Dismiss Balter's habeas motion "without prejudice" and at the same time transferred Balter's motion to this Court (Case No. 19-1489), pursuant to 28 U.S.C. § 1631. The government responded to the transfer, arguing that Balter's motion did not meet the gatekeeping requirements of 28 U.S.C. § 2255(h)(1). On March 26, 2019, Balter moved to dismiss what he called the "appeal" in No. 19-1489, insisting that he did not need our Court's permission to file his motion because it was not second or successive. We granted the dismissal of No. 19-1489 on April 4.

Meanwhile, on March 29, Balter appealed the District Court's Order of February 27. That appeal is designated Case No. 19-1667. Balter again challenged the District Court's conclusion that his habeas motion was second or successive.

On September 4, 2020, a Motions Panel of this Court directed that counsel be appointed as *amicus curiae* to assist Balter. In order to properly examine all issues before us, on April 26, 2021, we reopened the appeal in No. 19-1489. Balter had had sent a letter to the Court, stating that he had no objection to the reopening of No. 19-1489.

**II**

---

[4] *Id.* § 2255(h)(1).

## A.

As an initial matter, we have jurisdiction over Case No. 19-1667. Ordinarily, a district court should dismiss a second or successive § 2255 motion for lack of jurisdiction.[5] We have suggested, however, that in some circumstances a district court may transfer the motion to this Court as though it were a motion seeking permission to file a second or successive motion.[6] Although the government moved for dismissal *or* a transfer, the District Court did both, dismissing the case "without prejudice" *and* transferring it. Because the District Court dismissed the case, it could not also transfer it. In order to resolve this conflict of dispositions, we will interpret the action taken by the District Court to be a dismissal. Moreover, it is evident from Balter"s pro se brief that he wishes to stand on his petition as presented. The order of dismissal by the District Court was, therefore, final and appealable.[7]

## B.

Balter argues that § 2255(h) should not apply to *Brady* claims under the Supreme Court's decision in *Panetti v. Quarterman*.[8] *Panetti*, in turn, relied on *Stewart v. Martinez-Villareal*.[9] In *Stewart*, a federal court denied as unripe a state prisoner's "*Ford*

---

[5] 28 U.S.C. § 2244(b)(4).
[6] *Robinson v. Johnson*, 313 F.3d 128, 139 (3d Cir. 2002) ("When a second or successive habeas petition is erroneously filed in a district court without the permission of a court of appeals, the district court's only option is to dismiss the petition *or* transfer it to the court of appeals pursuant to 28 U.S.C. § 1631." (emphasis added)).
[7] 28 U.S.C. § 2253(a); *see also Goldblum v. Klem*, 510 F.3d 204, 213 (3d Cir. 2007) (holding dismissal without prejudice is final and appealable where plaintiff stands on complaint).
[8] 551 U.S. 930 (2007).
[9] 523 U.S. 637 (1998).

claim," a claim that a prisoner is not competent to be executed. The reason for the denial was because Arizona had not yet issued the death warrant. The court denied the prisoner's other claims on the merits. When Arizona did issue the death warrant, the state court denied the *Ford* claim on the merits. The prisoner filed a second-in-time *Ford* claim in federal court. The Supreme Court held that, because the prisoner did "not receive an adjudication of his [*Ford*] claim" when it was dismissed as unripe, "[t]here was only one application for habeas relief" and the claim was not second or successive.[10] In *Panetti*, the Court extended *Stewart* to a case in which a prisoner failed to file a *Ford* claim in his initial petition.[11]

Balter argues that if the government continues to suppress evidence after trial, there could be *Brady* claims that, like *Ford* claims, cannot be brought in an initial § 2255 Motion. Every circuit to address this issue,[12] however, has held that *Stewart* and *Panetti* are limited to "the particular circumstances presented by a *Ford* claim."[13] *Ford* claims, unlike *Brady* claims, usually do not *ripen* until after an initial § 2255 motion is brought. Moreover, § 2255(h)(1) already provides an exception for claims, like Balter's proffered *Brady* claims, based on (1) "newly discovered evidence" that (2) "would be sufficient to

---

[10] *Stewart*, 523 U.S. at 644–45.

[11] *Panetti*, 551 U.S. at 945.

[12] *See Blackman v. Davis*, 909 F.3d 772, 778–79 (5th Cir. 2018); *In re Wogenstahl*, 902 F.3d 621, 627–28 (6th Cir. 2018); *Brown v. Muniz*, 889 F.3d 661, 674 (9th Cir. 2018); *In re Pickard*, 681 F.3d 1201, 1204–05 (10th Cir. 2012); *Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257, 1260 (11th Cir. 2009); *Evans v. Smith*, 220 F.3d 306, 322–23 (4th Cir. 2000). *But see Scott v. United States*, 890 F.3d 1239 (11th Cir. 2018); *United States v. Lopez*, 577 F.3d 1053 (9th Cir. 2009); *Douglas v. Workman*, 560 F.3d 1156 (10th Cir. 2009).

[13] *Id.*

6

establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense."[14]  Balter argues that applying § 2255(h)(1)'s clear-and-convincing-evidence standard, rather than *Brady*'s more lenient materiality standard, to *Brady* claims that could not be brought in an initial § 2255 motion is unfair. But because § 2255(h)(1) applies only to claims based on "newly discovered evidence," Congress implicitly recognized that some claims that could not be brought sooner must meet that higher standard.[15]

In any event, we need not decide in this case whether § 2255(h) applies to the type of hypothetical *Brady* claim identified by Balter.  Even if we were to construe *Panetti* broadly to apply to *Brady* claims that could not have been brought in an initial motion, Balter has not shown that *he* could not bring *his Brady* claim in his initial § 2255 motion in 1997.  To allege that a claim could not have been brought sooner because of newly discovered evidence, a prisoner must show that the evidence "objectively *could not have been* discovered [earlier] through the exercise of due diligence."[16]  The due diligence requirement "'cannot be collapsed' into 'the merits of [the] *Brady* [claim]' itself," and "where the record demonstrates that the defendant or defense counsel was aware of the

---

[14] 28 U.S.C. § 2255(h)(1).

[15] *Cf. Felker v. Turpin*, 518 U.S. 651, 664 (1996) (upholding AEDPA's gatekeeping standards); *In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997) (explaining that § 2255 is not inadequate "merely because [a prisoner] is unable to meet the stringent gatekeeping requirements of" § 2255(h)).

[16] *E.g.*, *In re Will*, 970 F.3d 536, 542 (5th Cir. 2020).

7

potential *Brady* material but failed to pursue investigation of that ultimate claim," he has not been diligent.[17]

The crux of Balter's claim is an agreement between himself and Cohen. He obviously knew that that agreement existed. He also knew that the government seized the agreement and other documents from his business before trial. He told counsel that "the [g]overnment took all of his business records from [his business'] warehouse, and that within that mountain of papers should be proof that the [g]overnment's theory of the case was wrong."[18] He was not diligent in recovering the agreement.

Although Balter vaguely alleges that counsel "was unable to locate [the documents] when examining the boxes of records in the custody of the [g]overnment" because they were "deliberately hidden so that inspection by counsel was not reasonably calculated to turn them up," he provides no details about whether he requested the documents from the government, how counsel otherwise came to inspect the boxes, or whether the documents were missing from the boxes or merely tucked between other documents (as he alleges they were in 2007). Nor does he explain why he did not include this claim in his initial § 2255 motion and waited over ten years to ask the government what happened to the missing documents.

---

[17] *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 293–94 (3d Cir. 2021) (alterations in original) (quoting *Johnson v. Dretke*, 442 F.3d 901, 910 (5th Cir. 2006)).
[18] Mem. in Support Mot. Vacate at 3, Dist. Ct. Doc. No. 1-1.

Because Balter has not shown that he was unable to present his claim earlier, *Panetti* could not possibly apply here. Accordingly, Balter's Motion is second or successive, and he was required to seek our permission before filing.

### III

For the above reasons, we will affirm the Judgment of Dismissal of the District Court.